Good morning, Your Honor. My name is Arpit Garg. For the plaintiff appellant, Mr. Chapman, I'd like to reserve two minutes. Yes, that's fine. Go ahead. May it please the Court, under Turner v. Safley, which defendants concede is the applicable standard, Mr. Chapman's constitutional claims turn on a single factual dispute. Did he engage in third-party contact or not? Mr. Chapman has consistently disputed that allegation, and he has submitted sufficient evidence into the district court record to support six different arguments, as our brief lays out, in support of his position. More than that, he's created a credible, competing narrative to that of the prison. And this is thus a classic question of triable fact. Did third-party contact occur or not? And the district court fundamentally erred in granting summary judgment. The key point of contention, I believe, with us and the opposing side, at this stage in the briefing, is what was the rationale contemporaneously offered for the no-contact orders. So what specific ways was Mr. Chapman prejudiced by defendants' failure to provide him with notice of the evidence against him prior to the meeting? Oh, so I understand Your Honor is asking about the procedural due process argument. So in a practical sense, I think it's what we would be asking for is relief in this case if the court only ordered the found violation of procedural due process would be he would be entitled to a hearing and he would be allowed to actually present his case and rebut it. It's probably true, as is always the case with procedural due process cases, that the prison could do what they wanted anyway. Procedural due process just gets you procedure. I just want to make clear, you have two claims here, one a procedural due process claim and a substantive due process. That's right. And Judge Callahan's question was directed at the procedural due process, and that entails his claim or his little dispute over who listened to the telephone call. It deals with his wife or his former wife. It deals with the appropriate grievance procedure at the prison related to the restriction of his liberty interest. So our claim is that the Supreme Court's prisoner due process cases have outlined that the procedural rights to which you are entitled are two portions of those are crucial. You are entitled to notice of the factual basis for the restriction, and two, you are entitled to some sort of an evidentiary hearing in which you can rebut that claim. What happened here was they just said, this is quoting from their summary judgment motion, we're going to have a hearing, that's the notice, and then at that hearing he was not permitted to defend himself. He was there. He was there. We're not disputing that he wasn't there. It just wasn't an opportunity for rebuttal. What does the record say, though, about what was he told was going to happen there? What does the record say? So the record says that he was told that there was going to be an FRMT hearing. FRMT. They say anything more? What does the record say? Does it say what was going to be discussed or? It's actually unclear. I mean, the kiosk notices, the record has these kiosk notices that his counselor sent to him, and those kiosk notices say we're going to have a meeting with your prison council, with your prison team, and that's all it says there. Wasn't that the dispute over his, they didn't want to have him contact his wife? I mean, both his wife and his son. His son. Both of those things were imposed. So let me be clear. What we want, what he should have been entitled to is if they're going, the basis for their imposition of that order was that they thought he had engaged in third-party contact. And so for him to. Through his wife. Through, yes, exactly, that he used his wife to contact his victim daughters. Our point is that he needed to have notice of the factual basis for that allegation. If they think he committed third-party contact, when, how, who observed it? And that detail was provided at the hearing. The hearing notes say that you used Patricia to contact the victim daughters on January 23, 2012. That's ER 222. So they say that. That's when they told him what was going on. But that's not what notice is. Notice, you need to have notice prior to the hearing in order to. If they had told him all that before, would that have been enough? I'm sorry. Go ahead. Judge Callahan. Yes. If they had told him. That is what our argument is. That's what notice is. Notice requires notice of the factual basis for the imposition of a charge. And so he should have been told the details of the no-contact orders because that's how he can prepare a defense. If he's told no contact occurred on January 23rd, he can then go out and do what he tried to do here, which was get evidence of, well, who can listen to my phone calls. And it actually allows him an opportunity to have a meaningful hearing, as opposed to a hearing where he just shows up and finds out something that he can't really rebut at that stage. You say the first notice he had about these concerns was at this meeting? It's unclear, I think, in the record. This is summary judgment standard. There is some reason to think that there might have been an oral communication between Hilpert and him. Some reason? I thought there was Bailey and Hilpert both expressed concern about his efforts and determination to contact his daughters through Patricia. I think I'd like to distinguish between two points there. The basis for the prison's order was that he did commit third-party contact. I understand, but you're talking about his preparation and what he could have had in his defense when he shows up at the hearing. This was not a big surprise to him that they had these concerns. Is that correct? It may not have been a surprise that they had those concerns, Your Honor, but it was a surprise to him when they show up and they say, you committed, you actually engaged in third-party contact. Because the first thing he does is he writes a letter, a note, to Mr. Hilpert and says, where is this coming from? You have yet to show me proof. Give me the date. Give me the time. Aren't I entitled to cross-examine this? So, yes, they have these concerns, but the basis for their order was that he did commit no contact. And when they do confront him with that, he says, where's your evidence? And they have yet, I mean, I know we've talked a lot about the procedural due process argument, but I would like to return to our substantive due process argument. Our point there is very simple. The basis for the prison's order that was contemporaneously articulated was that he committed, that he actually did contact his victims through his ex-wife. That is the basis that's in the record at ER-222. And I want to read it for you because it is crucial. This is what the notes say. He was told that these conditions were imposed because the MDT had reason to believe that he violated the court-imposed no-contact orders via third-party contact. That's ER-222. That is the justification that's in the record. The red brief has a lot of new justifications. Those are post hoc rationalizations. Those aren't available under this Court's precedent in Walker v. Sumner. And once it's just that basis, he has created a genuine question of material fact as to that as our brief lays out. And that is enough to. . . So just looking at it that way, what's the fact, frame the factual dispute? I mean, what does the district court have to try? What does the district court have to determine? Whether or not he actually did engage, use his ex-wife to contact his victim daughters between November of 2011 and January of 2012. That is the allegation that the prison relies on to impose these no-contact orders. And the. . . I thought the prison also relied on the fact, at least with respect to his wife and the daughters. The prison just relied on the district court's order. The district court's order. . . Oh, so I'm. . . I'm sorry, the state court order. The state court. . . The judgment and sentence. The judgment and sentence. Yes, okay. In the state court's judgment and sentence, the state court said no contact with the victims. Okay. So that we're agreeing. We concede that his judgment says he cannot have contact with the victims. So why can't the prison, as part of their penological, you know, business of tending to this fellow, just. . . We're going to carry that out. The victims. . . But they. . . They allege that he did so through third-party contact. So that's why. . . I mean. . . They're just implementing the order. But, I mean, Your Honor, his view is that that never happened. He never did use third-party contact. He's not disputing that he can't contact the victims. He's disputing. . . He wants to be able to contact. . . What's the factual dispute there? I mean, if they can impose that order, why does there have to. . . Why does the district court have to conduct a trial to determine whether or not, in fact, he did? The basis for their order. I mean, the prison set forth. . . The basis. . . Also, you're saying they could prohibit it. So what's he being deprived of then? Maybe I should be. . . If they can do it, what's his harm? The fact that they say, well, you actually did it. Whether he did it or not, if there's sufficient basis, both in the judgment and sentence, and there are general concerns that he should have no contact, and they formalize it and say you shall have no contact, then what's his expectation that he should be able to have contact? That's what I'm not following. Maybe I should put it another way. The court. . . You should. The court's judgment and sentence prohibits contact with his victims. Yes. In Section 4.5, there were also civil no-contact orders that were lifted. Okay. Which would suggest that the courts did not think that he should be disallowed from contact with Patricia or his son. Courts had an opportunity to pass on that question. They initially did it, and those were lifted. Okay. So here the prison has gone. . . What you're saying is they could not prohibit, under the sentence and judgment, contact with Patricia unless he was using it to contact the victims. That's right, at least if that's their justification. Except weren't the two victims under the control and care of the wife, the ex-wife, Patricia? That's right, Your Honor. And. . . See, I don't understand. So the state criminal judge, when he sentences Mr. . . . Chapman. Mr. Chapman, says when he arrives at the prison and they do their processing and they look at the judgment, they look at the victim, what the criminal judge ordered, they say no contact. It seems to make sense that they would say, all right, you're not to contact your wife. You're not to contact these victims. They're in. . . It's a family unit. I appreciate that, Your Honor. I don't think that's what they did. So I think what Your Honor is suggesting is not the rationale that they articulated. They didn't say. . . Well, they were trying to. . . I thought they were trying to implement, at least with respect to the daughters, they were trying to implement and carry out what the criminal judge had ordered. That's right. But they extended it past the daughters and applied it to Patricia, who at the time he had reconciled with and was attempting to remarry, and his biological son. But wasn't there something about he wasn't supposed to have contact with minor children, period? We're not objecting to that aspect of it. Because that would pull his son in, even though. . . We're objecting to that application of it, that he wants to be able to have contact with his son and Patricia. So I take your point, Your Honor, is that a prison could view that when you have prohibited. . . whenever there's a court order prohibiting contact with daughters, that a logical extension of that is that it should extend to the whole family unit. That isn't the rationale that the prison used here. That's not what the prison said. The prison didn't say that. They said you used Patricia to contact the daughters, as if to say, well, if you hadn't, you could go ahead and have a relationship with Patricia. Suppose they're wrong on that, that there's still enough of the evidence, it seems, of his interaction with his counselors and the general background of his attitude that he wanted to have contact with his daughters and reconcile. And why couldn't they have just relied on that to say, we don't want you having contact with Patricia, given your stated wish to reestablish contact with your daughters? I think a prison could do that. I think Your Honor is asking a hypothetical question now, because that wasn't the rationale they articulated. But I think a prison could do that. I think if you interpreted that as what they did here. . . But they never invoked this other. . . This is not phrased. I quoted to you from the contemporaneous notes of the orders that were imposed. They don't say we think you will. I mean, the red brief has convenient paraphrasing, where they say that that's what the citations to the record are, that the prison had concerns about him doing this. But that's not what the actual contemporaneous evidence in the record suggests. And as long as he has created a genuine question of material fact. . . Just give me the site for which. . . Yes. The prison notes. These are ER-222. Okay. Thank you. I realize you're over your time, but I just want to ask you one last question. Yes. Can you really separate the procedural due process claim from the substantive due process claim? I think so, Your Honor. I think it is true that if he wins the procedural due process claim and not the substantive due process claim at a trial, it would get him processed for an order that's already in effect. And so maybe there's not that much to it. But it's very important going forward, because if what the prison decides to do, say they lose this no contact order and a trial, a judge orders it vacated, the prison may decide to do this again. We can see that that's possible. They can try again. They can actually articulate these justifications in a new order. But then it's very important that he have procedural due process rights in the subsequent proceeding. So we still think it's important, even if not as practically relevant for this case. In this case, we think the substantive due process claims are stronger. Okay. Okay. Thank you. We'll hear from the State. We'll hear from the State. Good morning, Your Honors. And may it please the Court. Assistant Attorney General Tim Fulner on behalf of the defendants. Two of the most fundamental interests served by the correctional system are the enforcement of an individual's judgment and sentence and the protection of the general public, especially crime victims. The district court correctly granted summary judgment here because Mr. Chapman failed to show that defendant's actions did not serve those two legitimate interests. I want to start first with the procedural due process issue that was discussed in the opening. Well, the record isn't as clear as it could be on this because I can't tell exactly from the record whether Mr. Chapman was ever, has he ever been informed of what specifically about the January 23rd phone call was problematic. And I think what, you know, let's, you know, play the devil's advocate here. How could Mr. Chapman have meaningfully defended himself at the, do you call it, is it FRMT or? Yes, Your Honor. Do we have the, I don't know, that way of saying it, meeting if he was not specifically informed of the evidence against him? Your Honor, there's no requirement that he be informed of the precise evidence prior to the hearing. There's never been a requirement of that in the prison context. But in this case, he was given notice that they were going to be imposed additional conditions through two messages sent by the counselor. Those are at ER 216 and 217. And he had a conversation with the counselor prior to the hearing where the counselor explained to him that he was going to be recommending a no contact order. That is all in the record? That is all in the record. The summary judgment record? Yes, Your Honor. ER 207 is the portion of the declaration where Mr. Hilpert told Mr. Chapman that these conditions were going to be imposed. So that is part of it. Did they tell him the basis for it? That is not in the record, Your Honor. They say the reason why we're doing this is because we overheard a conversation that you had with your wife, where in that conversation you asked her to relay messages to your daughters. There is nothing in the record to that effect, Your Honor. However, what is in the record is that the prison has had these concerns basically the entire time. Well, I appreciate that, and I understand that, because I understand kind of how the process works. But was he alerted to the basis for that, for the reason? There is simply nothing in the record. And part of that is because Mr. Chapman was not raising it as forcefully in the district court as he is here, so that could not have been corrected. Well, I mean, let me ask you, in these administrative proceedings in the prison system, I thought the prisoners had a chance to sort of respond to whatever action the prison officials are going to take. They do, Your Honor. It's supposed to be a meaningful opportunity to respond. And he did have an opportunity. Well, how can he respond if he doesn't know what the basis for the action is? Well, let me clarify, Your Honor. He did not receive notice of the basis of the action prior to the hearing. He did attend the hearing, and it was discussed that their basis was these notes. Well, how is he supposed to go out and do whatever kind of investigation he could do or make contact or do or prepare? I mean, it doesn't seem like it has the flavor of a really full and fair hearing. First of all, Your Honor, I think the appeals process where you can ask to have that reviewed by a third party, and, in fact, it was automatically reviewed by a third party in this case who was not involved in the initial decision, that is part of the procedural protections that make this sufficient and a due process. Even in the disciplinary process. Well, when it went up to the next level, did that person say this is the basis for, you know, this is we have this phone call, we have this tape recording or we recorded this phone call and you can listen to it and that will explain why we're doing what we're doing? There's nothing in the record to that effect, Your Honor. However, there is that they affirm the conditions that Mr. Chapman raised his concerns and his arguments to multiple prison officials at multiple levels, and those concerns were dismissed and the conditions were upheld. Even in the disciplinary context in prisons, it's a 24-hour notice requirement. It's not a you get two months to conduct a discovery. Oh, I understand that. But they're still supposed to have a chance. I understood. I thought that's what our case law is. That's what the case law is. They have to have an opportunity to rebut or to respond. And to be clear. It has to be meaningful. And to be clear, the defendant's position is that it was meaningful because he was given an opportunity to participate in that discussion and it was explained the basis of the conditions and he was given an opportunity to present his case. The fact that the prison officials disagreed and that they believe they had a basis to impose these conditions does not mean that that's a violation of procedural due process. That just means that the prison officials disagreed. Did somebody actually listen to his conversation? Is that what happened? Mr. Hilbert indicates he did listen to the conversations. Yes, Your Honor. Then I gather there's a recording of those conversations? Yes, Your Honor. Why didn't you just give them to him or let him listen to them? Well, first of all, Your Honor, under state law, there is a restriction on where those recordings can be distributed, how they can be distributed. They cannot be just filed in court. There needs to be a court order to file it and I guess arguably even to give it to someone that's not in the Department of Corrections. When was he told that it was based on this conversation? When did that come out? Well, first of all, I want to clarify. The defendant's position is that it was based way more on one single phone call. However, the phone call was discussed during the February meeting where that's indicated in the record at ER 221 and 222. But again, this is about the entire process by which the department had their concerns with Mr. Chapman's contact. That process starts with his judgment and sentence, which impose significant conditions on Mr. Chapman, which limit his ability to contact all minors. And additionally— But the judgment only really relates to the daughters. No, Your Honor, I disagree. The judgment indicates— Did the judgment say you're not to have any contact with any minors? Yes, as a condition of community custody, Mr. Chapman did try to contest that issue in state court on a criminal appeal. No, no, no. Did the judgment say you're not to contact any minors? Yes, Your Honor. Or did it say you're not to have contact with the victims? Both, Your Honor. It did? Yes, Your Honor. Mr. Chapman is not allowed to initiate or— I thought there was a prison rule that said— No, Your Honor. The prison rule that comes into effect is that this is a condition of community custody. And so under the department's policy, any conditions of community custody that prohibit contact with minors would also be implemented during the prison term. You're talking his initial judgment that resulted from his sexual assaults of his two biological daughters said no contact with those two girls, but also no contact with minors. Correct, Your Honor. And as the way that it was phrased, that was interpreted to mean the biological son, who was also a minor at the time, correct? Yes, Your Honor. Because there's three biological children plus, I believe, a stepdaughter that was a little older that was the ex-wife's child? Correct, Your Honor. And so the two biological children were— was there any factor in terms of— because obviously the ex-wife had initially caught the defendant in flagrante delicto with his biological daughter. I'm understanding that there was a gun came out and he was ordered out of the house, but then the ex-wife allowed him back to attend a dinner party and then he was out—I mean a birthday party, I guess. So there were some concerns that the ex-wife might not be the best protector of these children, even though she ultimately did contact the police. Yes, Your Honor. She didn't contact them immediately when she caught him, right? Yes, it was a couple days later, and that was part of the concern. That was part of the concern in the initial prohibition of visitation. That's the entire sequence of events I was referring to. When Mr. Chapman came into the Department's custody, the issue was reviewed and eventually there was an imposition on just visitation with his ex-wife, and that imposition of restrictions on the visitation, which is at ER 213, talks about the concerns about Ms. Chapman's ability to protect visitation. So they took kind of an intermediate step where Mr. Chapman continued to have contact with his ex-wife through the mail and emails and the phone calls. And then when it proceeded and they had additional concerns in February, that's when they imposed the across-the-board contact. And also in February, I would like to point out that during the time Ms. Chapman actually did have a civil no-contact against Mr. Chapman. But then at one point she was going to remarry him too, right? Yes, Your Honor. But then that's no longer the case. Yes, Your Honor. So is that of concern to the prison, that if she would remarry him after committing these acts on their biological children, is that factored into whether she would be a responsible person in protecting the children? It factors into the prison's decisions about the restriction of the contact, and that contact impacts the ability of Mr. Chapman to marry his ex-wife because of the visitation. However, that issue is basically moot. As Ms. Chapman has indicated, she has no desire to marry Mr. Chapman and indeed is terrified of him at this point. Unless the Court has any additional questions, I would simply ask that the Court affirm the District Court's decision. Okay. Thank you. I'll give you a minute for rebuttal. Can I make four points, Your Honor? Go ahead. The first is that there is authority for the proposition that the notice has to be factual. That is in Wolfe v. McDonald Supreme Court case, which says the function of notice is to give the charged party a chance to marshal the facts in his defense. That's on page 41 of our opening brief. Another point defendants said is that they said Hilpert listened to these phone calls, that if that is in fact true, he has created a genuine question of material fact as to Hilpert's credibility. At ER 428 is a communication between Mr. Chapman and the head of essentially IT at the prison, where he says he memorializes a conversation where he says to the phone calls during that period of time. So this is a credibility dispute. His plain old position is that Mr. Hilpert is lying, and that is a case in which it's a genuine question of material fact. It's important. One more point, Your Honor. Judge Paius, you were surprised to hear that minor children were covered by the judgment and sentence. The judgment and sentence has community custody condition, the equivalent of parole conditions. Right. And those parole conditions prohibit him from being in prolonged contact with minor children without the presence of an adult. Right. Our view is that those are parole conditions. Those are for if the State of Washington ever decides to let him out after a minimum of 18 years, then those conditions would go into effect. Well, wait, wait, wait, wait. I'm looking at it, yes. But by implication, you're not suggesting, are you, that these conditions couldn't be imposed or didn't necessarily exist with respect to when he was in custody? Of course they must have. The phraseology of this document, and we walk through it in our library. It's a form. I'm sorry. I'm looking at it. It's a form. Yes. And it refers to community custody conditions. I agree with counsel. Look, he's in custody. So why would the judgment and sentence have to say, you know, while he's in custody, he can't have contact with minors? That's sort of the assumption, right? Okay, so when he's out in the community, these are what we want to retain so that he doesn't reoffend. I mean, I don't understand the logic that would say somehow he could have greater rights in prison than he could have when he's out on community custody. So let me make two points. First, Your Honor, I still think this is a post hoc rationalization. No, I think I'm just reading. No, no, you were reading absolutely correctly from the judgment and sentence. I'm saying that's not what they articulated in those orders. You were responding to Judge Paya's question about his surprise. And you were invoking that this is only dealing with community release. I don't understand the logic of that. Let me be more precise. We read this language as being about physical presence with a minor child. So what that would imply is perhaps that would imply a visitation restriction in prison. That would be the equivalent Judge Fischer, is that just like when he's outside there is a limitation on his presence with minor children, the analog would be that he cannot have the same physical presence with a minor child. That would happen through visitation restrictions. And there is a body of law out there on contact visitation and non-contact visitation. But the prison says— I think we're getting away from the nature of this crime. So I appreciate what you're doing. And, by the way, you are pro bono, and we very much appreciate that. Thank you. We need to cut you off. Thank you. Thank you. And just because this subject came up on the news today, our questions from the bench don't read them as putting anybody down. The whole interaction on oral argument is for us to get a final handle on the case. We read your briefs. We know what's going on, and we have these questions. And sometimes we get a little emotional when we ask questions, but we fully appreciate what you lawyers are doing. Because the commentary today in the press was, well, there was some tough questioning for one side or the other. That's not going to flag the result. Thank you. Thank you all. Thank you, counsel. We appreciate your arguments and the matters submitted. And all of us appreciate the fact that lawyers are willing to serve as unpro bono. It's very helpful. Thank you.
judges: Fisher, Paez, Callahan